# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA,
# ATLANTA DIVISION

| | |
|---|---|
| TAYLOR GIPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. _____ |
| v. ) | |
| ) | |
| POPEYE'S CHICKEN & BISCUITS, ) | |
| A/K/A NASHVILLE RESTAURANT ) | JURY TRIAL DEMANDED |
| MANAGEMENT, LLC, and COBB ) | |
| COUNTY, GEORGIA ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW Plaintiff Taylor Gipson ("Taylor") and files his complaint against the above named Defendants based on the following allegations:

## JURISDICTION AND VENUE

1.

This Court has subject matter jurisdiction over the claims asserted by Taylor pursuant to 42 U.S.C. § 1332 because this case involves the application of federal anti-discrimination legislation, to wit, the Americans with Disabilities Act ("ADA"). This Court has supplemental jurisdiction over the pendent state law claim of defamation since it arises out of the same facts as the federal law claim.

1

2.

Venue is proper in the Atlanta Division of the Northern District of Georgia, because the events giving rise to this Complaint occurred in this district and division. In addition, Defendants are located there and have their principal places of business there.

**PARTIES**

3.

Taylor resides at 12120 S. Magnolia Circle, Johns Creek, Fulton County, Georgia 30005. He is a disabled individual entitled to the protections of the ADA because he suffers from Type I Diabetes, an incurable disease which causes his blood sugar to rise and fall to dangerous highs and low levels without warning.

4.

Nashville Restaurant Management, LLC ("Nashville") is a Georgia Corporation. Nashville owns several Popeye's Chicken & Biscuits ("Popeye's") franchise restaurants, including one such restaurant located at 2691 Windy Hill Rd., Marietta, Georgia (hereinafter "Restaurant"). Nashville's principal office is located at 625 DeKalb Industrial Way, DeKalb County, Decatur, Georgia 30033 and it can be served with the Complaint and Summons by service upon its

registered agent, CT Corporation System, at 1201 Peachtree St., Atlanta, Georgia 30361.

5.

Defendant Cobb County ("Cobb") is a political subdivision of the State of Georgia. Cobb operates a police department and employs T.M. Fuller ("Officer Fuller") as a police officer. Cobb can be served with the Complaint and Summons by personal service upon Tim Lee, the Chair of the Cobb County Board of Commissioners, at his business office located at 100 Cherokee Street, Marietta, Georgia 30090.

**STATEMENT OF FACTS**

6.

Taylor is a twenty year old college student who is disabled within the meaning of that term under the ADA due to the fact that he has Type I Diabetes. Taylor employs a highly trained service dog named "Bear." Specifically, Bear has been trained to detect Taylor's high and low blood sugar levels by smell and alert him when his blood sugar falls or rises to dangerous levels.

7.

On Saturday, May 12, 2012, Taylor was attending an orientation in Marietta, Georgia for counselors recruited to work at Camp Kudzu, a camp that

specializes in helping kids with diabetes, where Taylor was scheduled to work during the summer.

8.

The orientation took place at a Wellstar facility near the Popeye's Restaurant owned by Nashville. After completing the training and leaving the facility, Bear alerted Taylor that his blood sugar was low. Taylor entered the Restaurant with Bear to order a meal to remediate his blood sugar. After ordering, Taylor took a table near the back door to wait for his food. As he was trained to do, Bear lay quietly on the floor beside him.

9.

Soon after sitting down, Taylor was approached by Shanika Parks ("Parks"). She wore a Popeye's uniform and represented herself to be the Restaurant's manager.

10.

Parks asked if Bear was a "seeing eye" dog. When Taylor said that he was not, she demanded that he vacate the restaurant because his dog was not allowed on the premises.

11.

Taylor told Parks that his dog was a service dog and was permitted in public establishments by federal law. Taylor explained the dog's purpose, and pointed out to Parks that Bear was wearing his vest, which clearly identified him as a service dog which can enter places of public accommodation.

12.

Parks became agitated when Taylor told her he had a right to the have his service dog inside the Restaurant under the ADA. Her agitation escalated when he declined to leave. Parks complained to Taylor that he was "costing her customers," and again demanded that he and his dog "get out of her restaurant."

13.

Despite the escalating hostility and agitation displayed by Parks, Taylor continued to calmly explain to her that he was legally entitled to have his service dog in the Restaurant and that he was not required to leave.

14.

Parks then escalated the matter by threatening to call the Cobb County Police Department ("Police") to have Taylor and his service dog forcibly removed from the Restaurant. When Taylor still declined to leave, and again

explained his right to have a service dog in a place of public accommodation, Parks called the Police.

15.

Taylor also placed a call to the Police to seek their assistance in explaining to Parks that he had a legal right to have his service dog inside a public accommodation such as the Restaurant.

16.

While waiting for the Police to arrive, Taylor was approached by a female customer accompanied by her two minor children. The customer told Taylor that she was a manager of another fast food restaurant and that she knew that Taylor had a right to have Bear in the Restaurant. The customer apologized to Taylor for Parks' behavior and expressed her sympathy for him. Taylor thanked the customer for the encouraging words as she and her children left the Restaurant.

17.

When a policeman arrived, Parks quickly marched outside to meet the officer and tell him her problem with Taylor before he entered the Restaurant. She loudly demanded that Taylor and his service dog be ordered off the property and removed by force if he refused. By this time, Taylor's mother had arrived and she overheard Parks' conversation with the officer.

18.

Taylor next spoke with the policeman, Officer Fuller. He told Officer Fuller that the ADA required the Restaurant to allow access to service dogs such as Bear. Taylor's mother offered to show him a card setting forth the laws regarding service dog access to places of public accommodation, but Officer Fuller refused to look at it. The officer abruptly stopped Taylor from speaking by stating that he "knew the law." Officer Fuller refused to further listen to Taylor.

19.

Officer Fuller again began to speak with Parks, who continued to demand Taylor's removal. Officer Fuller then returned to Taylor and stated that, because the Restaurant was "private property," he and Bear were trespassing and must leave immediately. Despite Taylor's renewed efforts to explain the requirements of the ADA to Officer Fuller, including again offering him the card that set forth the actual law, Taylor was forced to comply with Parks' demand that he vacate the Restaurant now that Officer Fuller was demanding he leave.

20.

Officer Fuller prepared an incident report to reflect what occurred at the Restaurant. A true and accurate copy of this incident report is attached as "Exhibit A".

21.

In the incident report, Officer Fuller documented that Parks stated that Taylor brought a dog inside the Restaurant, ordered food, and sat down at a booth near the door while the dog lay on the floor. She stated that she inquired about the dog and Taylor told her that he was a service dog. She also alleged that she noticed several customers walk inside the business and then leave, and she believed it was because the dog was present.

22.

The incident report further documented that Parks asked Taylor to leave after she contacted her general manager who advised her to have Taylor removed by the police if necessary.

23.

Officer Fuller acknowledged in his report that the dog was wearing a service vest.

24.

Additionally, Officer Fuller reported that he told Taylor that the Restaurant was private property and that he would have to leave upon their request. The report documented that Taylor left without incident after he was told to leave by Officer Fuller.

25.

There was no report by Parks to Officer Fuller of any altercation or fight, as was later alleged by Popeye's, and there is no memorialization of any such complaint by Parks in the incident report.

26.

Nashville & Cobb's refusal to allow Taylor access to the Restaurant with his service animal received a significant amount of media attention from a number of media outlets.

27.

To obfuscate the fact that its employee had violated the ADA, Nashville issued a written statement intended for media publication which was in fact published in the Atlanta Journal Constitution ("AJC"). See "Exhibit B".

Nashville's statement read in its pertinent part as follows:

"Through our investigation, we have learned that we serve that particular guest with the service dog regularly at this location without incident. It appears that on his most recent visit, a family came in with small children who were frightened by the dog as the guest and the dog were seated directly by the entrance. The parents were concerned for their children and apparently confronted the guest. The two parties engaged in a heated conversation, which quickly escalated, requiring the manager on duty to contact the police to intervene."

28.

Nashville's statement to the AJC was completely false and malicious. It was intended to cause damage to Taylor's reputation in an attempt to shift the blame for the incident from Nashville to Taylor. First, Taylor and Bear had never entered the Restaurant prior to the incident giving rise to this Complaint. Second, Taylor never engaged in *any* conversation with two parents whose children were frightened by the dog, let alone a "heated conversation". It was not an escalation of this fabricated "heated conversation" that led Parks to contact the police. Rather, as documented in the incident report prepared by Officer Fuller, Parks contacted the police because she wanted Taylor and his service dog removed from the premises.

29.

The incident report made no mention of any altercation between Taylor and any other patron or patrons of the Restaurant and documents that Parks called the police because she did not want the service dog in the Restaurant and Taylor refused to leave.

30.

In a later email from Nashville's counsel sent to reporters for the AJC, WSB Channel 2 News, and the Marietta Daily Journal, Nashville attempted to add credibility to the fabricated story by falsely alleging that it had surveillance video footage of the alleged incident involving Taylor and the other customers. See "Exhibit C".

31.

Nashville intentionally sought media publication of its false and malicious allegation that it had video footage of an altercation between Taylor and other customers. This false statement was printed in an AJC article attached as "Exhibit D" and a Marietta Daily Journal article attached as "Exhibit E".

32.

Nashville declined a request by the AJC to view the alleged video. Nashville has also declined to show the alleged video to Taylor or Taylor's counsel.

33.

Nashville has failed to correct or retract the defamatory statements made to the media despite a written demand that they do so from Taylor's counsel. See "Exhibit F".

34.

By implying that Taylor lied about why the Restaurant asked him to leave, and by further implying that Taylor engaged in an altercation with another customer that was so "heated" that it necessitated police involvement, the statements made by Nashville to the media injured Taylor's reputation and exposed him to public hatred, contempt, or ridicule, just so that Nashville could shift the focus away from their blatant discriminatory conduct.

35.

The statements made by Nashville to the media were made with malicious intent to cause harm to Taylor's reputation in an attempt to cover up the fact that Nashville discriminated against a disabled person.

# SUBSTANTIVE ALLEGATIONS

## COUNT I: FAILURE TO ACCOMMODATE IN VIOLATION OF TITLE III OF THE ADA

36.

Taylor incorporates paragraphs one through thirty-five above by this reference.

37.

Taylor is a qualified individual with a disability within the meaning and coverage of Title III of the ADA. His impairment, Type I Diabetes, substantially limits him in several major life activities, including eating and drinking.

38.

Taylor's dog, Bear, is a service animal within the meaning and coverage of the ADA. 28 C.F.R. § 36.104.

39.

The Restaurant, which is owned and operated by Nashville, is a public accommodation within the meaning and coverage of Title III of the ADA.

40.

A public accommodation must modify its policies to permit the use of a service animal by an individual with a disability. 28 C.F.R. § 36.302(c)(1).

41.

A public accommodation may only ask an individual with a disability to remove a service animal from the premises if the animal is out of control and the handler does not take effective action to control it, or if the animal is not housebroke. 28 CFR § 35.136(b).

42.

Taylor's service animal was in his complete control at all times while in the Restaurant. As reflected in the incident report, Bear was calmly laying on the floor by Taylor. Further, Bear is housebroken.

43.

The acts and omissions of Nashville, as described herein, constitute discrimination on the basis of disability, in violation of Title III of the ADA, 42 U.S.C. § 12181 *et seq.*

44.

Taylor is entitled to an order enjoining Nashville from further acts of discrimination.

45.

Taylor is entitled to recover all attorneys' fees and costs associated with the judicial enforcement of his rights under the ADA, pursuant to 42 U.S.C.A. § 12205.

## COUNT II: FAILURE TO ACCOMMODATE IN VIOLATION OF TITLE II OF THE ADA

46.

Taylor incorporates paragraphs one through forty-five above by this reference.

47.

Taylor is a qualified individual with a disability within the meaning and coverage of Title II of the ADA.

48.

Cobb is a public entity subject to liability under Title II of the ADA.

49.

Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on account of the individual's disability. 42 U.S.C. § 12132.

50.

The acts or omissions of the Cobb County Police Department, as described herein, are activities of a public entity covered by Title II of the ADA.

51.

The acts or omissions of Cobb, as described herein, constitute intentional discrimination on the basis of disability in violation of Title II of the ADA, 42 U.S.C. § 12132 *et. seq.*

52.

Taylor was injured as a result of Cobb's intentional and unlawful discrimination. He is entitled to all damages proximately caused by Cobb's unlawful acts or omissions, including compensatory damages in an amount to be determined by the enlightened conscience of the jury.

53.

Taylor is entitled to an order enjoining Cobb from further acts of discrimination.

54.

Taylor is entitled to recover all attorneys' fees and costs associated with the judicial enforcement of his rights under the ADA, pursuant to 42 U.S.C.A. § 12205.

## COUNT III: DEFAMATION

55.

Taylor incorporates paragraphs one through fifty-four above by this reference.

56.

Nashville, with actual knowledge of falsity or with reckless disregard for the falsity, caused the publication of a false and malicious defamation of Taylor expressed in print, writing, pictures, or signs, tending to injure Taylor's reputation and exposing him to public hatred contempt, or ridicule, as contemplated in O.C.G.A § 51-5-1.

57.

Alternatively, Nashville was negligent in failing to discover the falsity of the defamatory statements about Taylor as described above.

58.

As a result of this false and malicious defamation, Taylor is entitled to damages in an amount to be proven at trial.

59.

Nashville's conduct in making the defamatory statements described above showed willful misconduct, malice, wantonness, oppression, an entire want of

care, and conscious indifference to the consequences of its conduct to the rights and welfare of Taylor.

60.

Nashville's conduct described above evidences Defendant's specific intent to harm Taylor.

61.

Nashville's conduct described above raises the presumption of conscious indifference to consequences and entitles Taylor to an award of punitive damages against Nashville to punish, penalize, or deter Nashville from such conduct pursuant to O.C.G.A. § 51-12-5.1.

62.

Nashville has acted in bad faith, has been stubbornly litigious, and has caused Taylor unnecessary trouble and expense, entitling him to an award of attorneys' fees and expenses of litigation.

WHEREFORE, Plaintiff prays for the following relief:

(a)  That Plaintiff be granted a trial by jury;

(b)  That Plaintiff be granted equitable relief as provided by the ADA;

(c) That Plaintiff be awarded damages to compensate Plaintiff for all injuries proximately resulting from the Defendants' actions, in an amount to be determined by the enlightened conscience of the jury;

(d) That Plaintiff be deemed as prevailing party and awarded attorneys' fees and expenses of litigation;

(e) That Plaintiff be awarded pre-judgment and post-judgment interest;

(f) That Plaintiff be awarded such other equitable or monetary relief as the Court deems just and proper.

Respectfully submitted this 13 day of September 2012.

s/A. Lee Parks<br>
A. Lee Parks<br>
Georgia Bar No. 563750<br>
Maha Y. Amircani<br>
Georgia Bar No. 184261<br>
*Counsel for Plaintiff*

PARKS, CHESIN & WALBERT, P.C.
75 Fourteenth Street, 26th Floor
Atlanta, GA  30309
(404) 873-8000 Telephone
(404) 873-8050 Facsimile
lparks@pcwlawfirm.com
mamircani@pcwlawfirm.com