IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TAYLOR GIPSON,

    Plaintiff,

vs.                                  CASE NO. 1:12-cv-03210-JOF

POPEYE'S CHICKEN & BISCUITS,     JURY TRIAL DEMANDED
a/k/a NASHVILLE RESTAURANT
MANAGEMENT, LLC,

    Defendant.        /

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I.   INTRODUCTION**

      Defendant respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment. As fully set forth below, Plaintiff lacks standing to pursue his disability discrimination claim under Title III of the Americans with Disabilities Act ("ADA"). Further, no issues of material fact exist with respect to Plaintiff's defamation claim, and his ancillary claims for punitive damages and "bad faith" attorney fees necessarily fail as well. Because no claims in this case require resolution at trial, Defendant respectfully submits that Plaintiff's entire lawsuit is due to be dismissed with prejudice.

1

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

This case arises out of a single visit Plaintiff and his service dog "Bear" made to the Popeye's restaurant on Windy Hill Road in Atlanta, Georgia on May 12, 2012. *See generally* Plaintiff's Complaint. Bear is trained to help Plaintiff manage his diabetes condition. Deposition of Taylor Gipson ("Plf. Dep.") at 22-24.[1] Upon entering the restaurant with Bear, Plaintiff walked up to the counter and a Popeye's employee took his order. *Id.* at 65-78; Ex. B (surveillance video of Windy Hill Road Popeye's taken on May 12, 2012 and referenced during Plaintiff's deposition "Video") beginning at 14:36:03. Plaintiff ordered sweet tea and received a cup, which he later filled at the self-service drink station. Ex. B beginning at 39:50; Plf. Dep. at 76-78. Plaintiff then sat in a booth to drink his tea and wait for his food while Bear lay on the floor nearby. Ex. B beginning at 41:44; Plf. Dep. at 81-82. While he was waiting for his food, Plaintiff obtained a refill of sweet tea. Plf. Dep. at 87-88; Ex. B at 46:01. Plaintiff ultimately received his food. *Id.* at 114-15, 126; Ex. B at 57:41.

During his visit, Plaintiff encountered Shift Manager Shakela Parks. *Id.* at 88-89, 94-96; see also Exhibit B beginning at 46:01. At some point during the

---

[1] Copies of citations to the record evidence are included in Defendant's Appendix, filed contemporaneously herewith.

visit, Parks called 911 to report that Popeye's customers were complaining about Plaintiff's dog. Deposition of Shakela Parks ("Parks Dep.") at 16; Ex. 5 to Parks Dep. Parks also expressed confusion during the call about whether or not Plaintiff's dog was a "service animal." *Id.* The Cobb County police arrived, and Plaintiff ultimately left the restaurant with Bear. Plf. Dep. at 121-23.

Shortly thereafter, Plaintiff and his mother contacted local TV station Channel 2 TV to report the incident at the Popeye's. Plf. Dep. at 42-44. Popeye's was contacted by the media and asked to respond and ultimately made two public statements, one shortly after the incident and the other several days later. Exs. B, D, E to Plf. Complaint. In the second statement, Popeye's apologized to Plaintiff, stated that the company believed that the situation could have been handled better, and invited Plaintiff and his service dog to return to the restaurant. *See* Ex. D & E to Plf. Complaint. Popeye's in-house counsel also personally called Plaintiff and attempted to apologize for his experience at the Windy Hill restaurant, but Plaintiff cut her off and ended the call. Plf. Dep. at 159-61.

Henry Littman, General Manager of the Windy Hill Road Popeye's during the relevant time period, testified that he was aware that federal and state law require places of public accommodation to allow individuals to bring service dogs into a restaurant. Deposition of Henry Littman ("Littman Dep.") at 23. Littman

3

also testified that, based on his training with Popeye's, a customer with a service dog was to be treated "just like a regular customer." *Id.* at 27-28. Approximately a week after Plaintiff's visit, Popeye's provided Title III-based training at the Windy Hill restaurant. Littman Dep. at 29-30; *see also* Ex. D and E to Plf. Complaint; Ex. 5 to Plf. Dep.; Plf. Dep. at 186. The training was specifically focused on laws applicable to service dogs and included posters, brochures, laws and guidelines. Littman Dep. at 29-30; Ex. 5 to Plf. Dep.

Although Plaintiff and Bear frequently eat out at restaurants, they have not returned to the Windy Hill Road Popeye's (or any other Popeye's location) since the May 12, 2012 visit, and they have no specific plans to return. *See* Plf. Dep. at 218-19, 223-24.

### III.   ARGUMENT

#### A.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate when there is no genuine issue of material fact, such that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of showing the court "the basis for

4

its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-moving party has the burden of proof at trial, the moving party may discharge its initial burden by "'showing' . . . the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325 (internal quotes omitted). Once this burden is met, the non-moving party must then "go beyond the pleadings and . . . 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citing Fed. R. Civ. P. 56(e)).

As discussed below, the undisputed material facts and the relevant case law firmly establish that Plaintiff lacks standing to pursue his claim under Title III of the ADA, and that Plaintiff cannot prove the essential elements of his defamation claim. Accordingly, Defendant is entitled to summary judgment as a matter of law on all of Plaintiff's claims.

### B. Plaintiff's Title III Claim Fails For Lack Of Standing

Standing is a jurisdictional prerequisite to maintaining a claim in federal court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It is well-established that a plaintiff must demonstrate three things to establish standing

under Article III of the Constitution. "First, he must show that he has suffered an injury-in-fact. Second, the plaintiff must demonstrate a causal connection between the asserted injury-in-fact and the challenged action of the defendant. Third, the plaintiff must show that the injury will be redressed by a favorable decision." *Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001) (citing *Lujan*, 504 U.S. at 560-61) (internal citations and quotation marks omitted). As the United States Supreme Court has explained, these requirements are the "irreducible minimum required by the Constitution" for a plaintiff to proceed in federal court. *Id.* (quoting *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. City of Jacksonville*, 508 U.S. 656, 664 (1993)).

Further, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges … a real and immediate – as opposed to a merely conjectural or hypothetical threat of future injury." *Id.* (quoting *Wooden v. Bd. of Regents of University System of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2001)). In the context of cases brought pursuant to Title III of the ADA, courts have held that "a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to the inference that he will suffer from future discrimination by the defendant." *Id.* Here, at a minimum, Plaintiff cannot show a "real and immediate" threat of "future injury," and thus lacks standing to

6

pursue his Title III claim.[2]

Standing must exist as of the time the lawsuit is filed, and should be clear from the face of the Complaint. *American Civil Liberties Union of Florida, Inc. v. Dixie County, Fla.*, 690 F.3d 1244, 1257 & n. 5 (11th Cir. 2012) ("For jurisdiction, standing had to exist when the suit was filed … we have an obligation to assure ourselves that [the plaintiff] had Article III standing at the outset of the litigation.") (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 120 S.Ct. 693, 704 (2000) (internal citation omitted)). The Eleventh Circuit has held that, in undertaking the analysis of whether a plaintiff has pled sufficient allegations to establish standing, courts "may not speculate concerning the existence of standing or piece together support for the plaintiff." *Shotz*, 256 F.3d at

---

[2] Defendant believes that Plaintiff may also encounter difficulty in establishing that he suffered an "injury-in-fact." Although the treatment Plaintiff received at the Windy Hill Road restaurant was not up to Popeye's customer service standards or in full accordance with Popeye's training on Title III issues, it is undisputed that Plaintiff's order was taken, he received his sweet tea, which he drank while seated in a booth in the restaurant, and he received his food. Plf. Dep. at 115-16, 126. *See e.g., O'Connor v. Scottsdale Healthcare Corp.*, 2012 WL 2106365, at **2-3 (D. Ariz. Jun. 11, 2012 (plaintiff's interaction with hospital security guard and his manager regarding her service dog "Peaches" which caused a 40-minute delay in reaching her mother's hospital room did not constitute a denial of public accommodation); *Stan v. Wal-Mart Stores, Inc.*, 111 F. Supp. 2d 119, 126-27 (N.D.N.Y. Aug. 23, 2000) (plaintiff lacked standing to pursue Title III claim where, although she was subjected to embarrassing and humiliating questions concerning her disability and service dog by Wal-Mart employees, she was ultimately permitted to shop in the store).

1082 (quoting *Cone Corp. v. Florida Dept. of Transp.*, 921 F.2d 1190, 1210 (11th Cir. 1991)) (internal quotation marks omitted).

Here, the allegations in Plaintiff's Complaint fail to meet Plaintiff's burden of establishing Article III standing under Title III of the ADA. *See Lujan*, 504 U.S. at 561 (The party "invoking federal jurisdiction bears the burden of establishing [standing]"). In his Complaint, Plaintiff alleges no facts that could support a finding that he faces a "real and immediate" threat of "future injury." *See* Plf. Complaint at Count I. Significantly, Plaintiff does not allege that he has attempted to return to Popeye's since his May 12, 2012 visit, nor does he allege any intention to ever return. *See id.* Instead, Plaintiff's Complaint focuses exclusively on past exposure to what Plaintiff claims was illegal conduct – namely, his May 12, 2012 visit to the Windy Hill Road Popeye's. As the Supreme Court has explained, allegations of past misconduct alone – such as those contained in Plaintiff's Complaint – are insufficient as a matter of law to confer Article III standing. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects."); *see also Shotz*, 256 F.3d at 1081-82 (plaintiffs lacked standing to bring their Title III ADA claim where their complaint contained allegations of past discrimination but did

not allege that they had attempted to return to defendant's facility or that they intended to do so in the future).

While some courts have permitted a Title III plaintiff who fails to establish standing one chance to amend, permitting Plaintiff to amend his Title III claim in this case would be futile. *See generally Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 2206–07 (1975) (concluding, in context of motion to dismiss for lack of standing, that after opportunity to amend, complaint must be dismissed if standing not adequately apparent from complaint). Plaintiff has already filed a Motion to Amend and a proposed Amended Complaint with the Court. Like his original Complaint, Plaintiff's Amended Complaint does not allege that Plaintiff has attempted to return to the Popeye's, that he ever plans to return, or that he is otherwise subject to a real and immediate threat of future injury at the hands of Popeye's. *See* Plf. Amended Complaint at Count I.

Further, Plaintiff's deposition testimony makes clear that he cannot establish standing. Plaintiff testified during his deposition that, although he and his service dog frequently eat out at restaurants, he has not returned to the Windy Hill Road Popeye's (or any other Popeye's location) since his May 12, 2012 visit. Plf. Dep. at 58-59, 218, 223-24. In an attempt to cure Plaintiff's damaging testimony, Plaintiff's counsel asked Plaintiff, at the conclusion of his deposition, whether he

9

"would consider returning to the Popeye's" if the Court entered an injunction, and Plaintiff responded: "Yes, I don't see why not."  Plf. Dep. at 224.

However, this type of equivocal response – *i.e.*, that Plaintiff might *consider* returning to the Popeye's "some day" – has been repeatedly rejected as insufficient to satisfy the minimum requirements for pursuing injunctive relief under the ADA. *See Lujan,* 504 U.S. at 564 ("Such 'some day' intentions – without any description of concrete plans or indeed any specification of when the some day will be – do not support a finding of 'actual and imminent' injury that our cases require."); *Steelman v. Wendy's of N.E. Florida*, 2012 WL 4815757, at *1  (M.D. Fla. Sept. 20, 2012) (plaintiff's conclusory allegation that she "planned to return" to Wendy's restaurant was not sufficient to confer standing to seek injunctive relief under Title III of the ADA where plaintiff alleged no specific plan to return and provided no information as to any personal or business connection she had to the area); *Ault v. Walt Disney World Co.*, 2008 WL 490581, at *2 (M.D. Fla. Feb. 20, 2008) (plaintiffs lacked standing to obtain injunctive relief under Title III of the ADA where they failed to allege a specific intent to return to Walt Disney World but pled only vague, conclusory allegations of a general intent to return).[3]

---

[3] Courts have stressed that, in addition to being a constitutional prerequisite, standing is an essential consideration in ADA Title III cases, given the potential for holding defendants hostage for statutory attorneys' fees.  *See Rodriguez v.*

10

Moreover, even if Plaintiff could somehow show that he has concrete plans to return to the Windy Hill Road Popeye's (which neither Plaintiff's Complaint nor any record evidence supports) he cannot show that it is likely he would suffer harm on a subsequent visit to the restaurant. As discussed above, Popeye's policies expressly permit service animals to accompany their owners into the restaurant and, as General Manager Henry Littman testified, individuals with service animals are to be treated "like a regular customer." Littman Dep. at 27-28. Popeye's also conducted additional Title III training specifically focused on service animals at the Windy Hill Road restaurant following Plaintiff's visit. Littman Dep. at 29-30; Ex. 5 to Plf. Dep.; Exs. D and E to Plf. Complaint. Further, it is undisputed that Popeye's issued a public apology to Plaintiff via the Atlanta Journal Constitution (as well as other newspapers) and invited Plaintiff and his service dog to return. *See* Exs. D and E to Plf. Complaint. Plaintiff also admits that Popeye's in-house

---

*Investco, L.L.C.*, 305 F. Supp. 2d 1278 (M.D. Fla. 2004) (lamenting the current "ADA lawsuit binge" as being "driven by economics – that is, the economics of attorney's fees" and concluding that the plaintiff lacked standing as he did not convey an honest desire to return to defendant's facility but appeared to be merely a "pawn in an ongoing scheme to bilk attorney's fees from the defendant"); *Rush v. Islands Restaurant, LP*, 2012 WL 4849016, at **3-4 (S.D. Cal. Oct. 11, 2012) (plaintiff's Title III ADA claims did not evince a "proper purpose for litigating" where plaintiff lacked standing to pursue injunctive relief under Title III of the ADA and where plaintiff's counsel engaged in filings designed to block the removal of barriers so that the lawsuit could be prolonged for purposes of receiving additional attorneys' fees). Unfortunately, Plaintiff's counsel has indicated that his "assurance" of fees is an attractive quality in this matter.

11

counsel contacted him by telephone and attempted to apologize personally, but that he cut her off and ended the call. Plf. Dep. at 159-60.

Based upon these undisputed facts, there is simply no basis for concluding that Plaintiff – if he ever attempted to return to a Popeye's – would be at risk of any future harm whatsoever. *See Jolly v. Pappas Restaurant*, 189 F.3d 467 (5th Cir. 1999) (plaintiff could not show likelihood of future harm where restaurant apologized for poor service, offered plaintiff coupons and invited him back to dine); *Stan v. Wal–Mart Stores, Inc.*, 111 F.Supp.2d 119, 125–27 (N.D.N.Y. 2000) (holding that plaintiff, who is blind and requires the use of a service dog, and "may have been subjected to humiliation and inexcusable treatment by defendants' employees on several occasions" in the past, was not at risk of future harm where defendant apologized for the conduct of its employees, adopted the appropriate policies and conducted additional training).

Because Plaintiff cannot meet his burden of establishing the constitutional prerequisite of standing, this Court lacks jurisdiction to consider Plaintiff's Title III ADA claim, and it is subject to dismissal.

### C. Plaintiff Cannot Prove A Claim For Defamation As A Matter Of Law

Under Georgia law, "libel [or written defamation] is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to

injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51-5-1(a). To prevail on a claim for libel, a plaintiff must prove the four elements of a defamation claim: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Global Printing Solutions, Inc. v. Allison*, 2006 WL 2982880, at *1 (N.D. Ga. Oct. 16, 2006) (quoting *Mathis v. Cannon*, 276 Ga. 16, 20-21, 573 S.E.2d 376 (2002)). Here, at a minimum, Plaintiff cannot satisfy the fourth element of his claim.

Plaintiff alleges that the following statement Popeye's initially made to the Atlanta Journal Constitution (in connection with a newspaper investigation that Plaintiff initiated)[4] constitutes defamation:

> "Through our investigation, we have learned that we serve this particular guest with the service dog regularly at this location without incident. It appears that on his most recent visit, a family came in with small children who were frightened by the dog as the guest and dog were seated directly by the entrance. The parents were concerned for their children and apparently confronted the guest. The two parties engaged in a heated conversation, which quickly escalated, requiring the manager on duty to contact the police to intervene."

Plf. Complaint at ¶ 27-28 & Ex. B.

---

[4] Plaintiff admits that he and his mother contacted the local news station to report the incident at Popeye's and that he and his mother initiated the media coverage concerning the incident. *See* Plf. Dep. at 43-44, 156-58.

13

By its express terms, this statement is not "actionable irrespective of special harm" or, in other words, does not constitute defamation *per se*, as it does not: (1) impute to Plaintiff a crime punishable by law; (2) charge Plaintiff with having some contagious disorder or with being guilty of some debasing act which may exclude him from society; or (3) make charges against Plaintiff in reference to his trade, office, or profession, calculated to injure him therein. *Lucas v. Cranshaw*, 298 Ga. App. 510, 659 S.E.2d 612 (2008) (citing OCGA § 51-5-4). Thus, Plaintiff must plead and prove special damages to state a viable claim for defamation.

Plaintiff fails in both respects, as the record demonstrates that he has neither pled nor will he be able to prove the required special damages. In his Complaint, Plaintiff claims generally that he is entitled to "damages." Plf. Complaint at ¶ 58. However, he does not define these "damages," nor does he include a single allegation explaining how he was harmed by Popeye's allegedly defamatory statement. *See generally* Plaintiff's Complaint and Count III. During his deposition, Plaintiff admitted that, in fact, he has not been harmed in any way as a result of the allegedly defamatory statement made by Popeye's:

> Q: What effect has there been on you personally as a result of [the allegedly defamatory statement]?
>
> A: I mean, there was comments all over the Internet on these articles, there's places on some of them where people could

14

> leave comments, and there were some really mean comments saying that I was just some kid, and trying to bring my dog in the restaurant, and that I was wrong and they were referencing the statements from Popeye's, saying clearly this kid was wrong, and – there are – I mean, there's opposite statements of that too. Basically, there's people online fighting back and forth with each other in the comments on these articles, of some of them. And a lot of it was negative and hurtful.

Q: So there were some people who were saying supportive statements toward you; there were some people that were saying, "Here's a kid who wants to bring a dog in a restaurant?"

A: And I only looked at them briefly on maybe one or two of the articles, and then after I saw some negative ones, I stopped reading them. I'm sure – I don't remember any specific ones, but I know there were some negative ones. And somewhere people were posting links to other articles and stuff like that. And just trying to prove that I was wrong in the situation.

Q: What effect, if any, did that have on you?

A: I mean, like I said, I don't – I don't even use my Facebook, because I don't really like being in social things on the Internet much. And then here's all these random people that I don't even know talking trash about me and what I may or may not have done at this restaurant. And it was all over TV. So I just think it was a lot of negative attention that shouldn't have happened.

Q: Was there anything that came out of that, as you call it, negative attention?

A: I guess I don't understand the question. What would have come out of it?

Q: Has it impacted your ability to get a job?

15

> A: Not to get a job, but people have recognized me from TV and things. So I guess it could possibly, because if someone had read all the negative stuff and they recognized me, that could be a problem.[5]
>
> Q: So you're saying it could have, but it hasn't?
>
> A: Right.
>
> Q: And as far as the TV portion, those are interviews that you initiated, correct?
>
> A: Right.
>
> Q: Okay, is there anything else that you haven't mentioned that was an effect of the statements that Popeye's made that you allege are incorrect?
>
> A: I guess not.

Plf. Dep. at 189-192.

As Plaintiff's testimony makes clear, regardless of whether he can satisfy the other elements of his defamation claim, he cannot prove special damages, and Defendant is entitled to summary judgment on this claim. *See McGee v. Gast*, 257 Ga. App. at 883-885, 572 S.E.2d 398 (affirming grant of summary judgment where plaintiff failed to prove either slander *per se* or special damages arising from statements concerning his unfitness as assistant scoutmaster); *Walker v. Walker*,

---

[5] Plaintiff testified that he is currently employed at Towne Lake Hills golf course and that he plans to continue his career in the golf industry upon graduation from college. Plf. Dep. at 9-12.

293 Ga. App. 872, 876-77, 668 S.E.2d 330 (Ga. Ct. App. 2008) (affirming dismissal of defamation claim where plaintiff could not show defamation *per se* and where plaintiff's allegations that he was suffering from "loss of peace of mind, emotional distress, pain, suffering and anguish, and loss of sleep" were not sufficient to prove special damages under OCGA § 51-5-4).

### D. Plaintiff's Ancillary Claims For Punitive Damages And "Bad Faith" Attorneys' Fees Fail As A Matter Of Law

Plaintiff's inability to prove his defamation claim is also fatal to his claims for punitive damages and "bad faith" attorneys' fees pursuant to O.C.G.A. §13-6-11. *See* Plf. Complaint at ¶¶ 61-62. Under Georgia law, claims for punitive damages and attorneys' fees are ancillary claims that are not recoverable where no recovery can be had on the underlying tort claim. *See Whiteside v. Decker, Hallman, Barber & Briggs, P.C.*, 310 Ga. App. 16, 20, 712 S.E.2d 87, 91 (2011); *Davis v. Johnson*, 280 Ga. App. 318, 322, 634 S.E.2d 108 (2006).

Here, as discussed above, Plaintiff cannot prevail on a claim for defamation because he admits he has suffered no damages. *See* Plf. Dep. at 189-92. Accordingly, Defendant is entitled to summary judgment not only on Plaintiff's underlying defamation claim, but on his ancillary claims for punitive damages and attorneys' fees as well. *Fine v. Communication Trends, Inc.*, 305 Ga. App. 298, 305, 631, 699 S.E.2d 623 (2010) (affirming the trial court's decision to deny

punitive damages and fees and holding that "[b]ecause [plaintiffs] failed to prevail on their underlying defamation claims, their ancillary claims for punitive damages and attorney fees under OCGA § 13-6-11 were not recoverable."); *Roofing Supply of Atlanta, Inc. v. Forrest Homes, Inc.*, 279 Ga. App. 504, 632 S.E.2d 161 (2006) ("Because [plaintiff's] claims for punitive damages and attorney fees would have been awardable only if [plaintiff] had prevailed on its tort claims, they were properly dismissed as well.").

## IV.   CONCLUSION

As fully set forth above, Plaintiff lacks standing to pursue his claim under Title III of the ADA, and his claims for defamation, punitive damages and "bad faith" attorneys' fees fail as a matter of law. Accordingly, Defendant respectfully requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff's lawsuit in its entirety with prejudice.

Respectfully submitted this 23rd day of July, 2013.

/s/Lauren H. Zeldin
WILLIAM E. GROB
Georgia Bar Number 312902
E-mail: william.grob@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK &
 STEWART, P.C.
100 North Tampa Street, Suite 3600
Tampa, Florida  33602
Telephone: 813.289.1247
Facsimile: 813.289.6530
AND
DARA L. DEHAVEN
Georgia Bar Number 216250
E-mail: dara.dehaven@ogletreedeakins.com
LAUREN H. ZELDIN
Georgia Bar Number 368999
E-mail: lauren.zeldin@ogletredeakins.com
OGLETREE, DEAKINS, NASH, SMOAK &
 STEWART, P.C.
191 Peachtree Street, N.E., Suite 4800
Atlanta, Georgia  30303
Telephone:  404.881.1300
Facsimile: 404.870.1732


ATTORNEYS FOR DEFENDANT
POPEYE'S CHICKEN & BISCUITS, a/k/a
NASHVILLE RESTAURANT
MANAGEMENT, LLC

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

TAYLOR GIPSON,

    Plaintiff,

vs.                                                                    CASE NO.  1:12-cv-03210-JOF

POPEYE'S CHICKEN & BISCUITS,                JURY TRIAL DEMANDED
a/k/a NASHVILLE RESTAURANT
MANAGEMENT, LLC,

    <u>      Defendant.      </u>  /

## **CERTIFICATE OF SERVICE**

    I CERTIFY that on July 23, 2013, I electronically filed the foregoing Memorandum of Law In Support of Defendant's Motion for Summary Judgment with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:

A. Lee Parks
Andrew Y. Coffman
Parks, Chesin & Walbert, P.C.
75 Fourteenth Street, N.E.,  26th Floor
Atlanta, GA 30309
lparks@pcwlawfirm.com;
acoffman@pcwlawfirm.com

                                                     */s/Lauren H. Zeldin*
                                                     Attorney for Defendant